**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Frank Sam EARLY, Defendant–Appellant.**

**No. 95–3283.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1996.

Decided Feb. 23, 1996.

---

Steven A. Pihlaja, Minneapolis, MN, argued for appellant.

James E. Lackner, Asst. U.S. Atty., Minneapolis, MN, argued for appellee.

Before McMILLIAN, LAY and HANSEN, Circuit Judges.

PER CURIAM.

Frank Sam Early appeals his sentence of 144 months imprisonment imposed after he pled guilty to possession of cocaine base ("crack cocaine") with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

■ Early first challenges the district court's failure to apply the Sentencing Guidelines governing possession of powder cocaine to his conviction for possession of crack cocaine. Under U.S.S.G. § 2D1.1 (Nov.1994), the weight of crack cocaine is treated as 100 times the weight of powder cocaine, which in this case resulted in a base offense level of 28 rather than 14. However, the written plea agreement expressly provides that "[t]he parties believe that the applicable base offense level, at 27 grams of cocaine base, is a level 28." Plea Agreement at 2. Given that Early does not challenge the validity of the plea agreement or seek to withdraw from it, he may not challenge this application of the Guidelines on appeal. *See United States v. Nguyen,* 46 F.3d 781, 783 (8th Cir.1995). In addition, we note this circuit has clearly held the 100:1 crack-to-powder cocaine ratio provides no basis for departing downward from the applicable Sentencing Guidelines range. *United States v. Maxwell,* 25 F.3d 1389, 1401 (8th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994).[1]

■ Early next challenges the imposition of a two-level increase in offense level under U.S.S.G. § 2D1.1(b)(1), which provides for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed." The Guidelines commentary states:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1, comment. (n. 3). *See also United States v. Matthews,* 5 F.3d 1161, 1166 (8th Cir.1993) (reversing the application of § 2D1.1(b)(1) when firearm was found during a search almost fifteen months after the drug offense to which defendant pled guilty);

*United States v. Pou,* 953 F.2d 363, 371 (8th Cir.) (firearms seen on multiple occasions in apartment from which cocaine is sold establishes sufficient connection between weapons and drug offenses to sustain two-level increase under § 2D1.1(b)(1)), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580, *and cert. denied,* 504 U.S. 926, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992).

We think the district court did not clearly err in applying § 2D1.1(b)(1) to the facts of this case. Early concedes he showed a firearm to a confidential government informant during the course of a drug sale. The informant testified he had seen Early with firearms at other drug sales, and that Early said "he was going to shoot me if he didn't know who I was" when the informant arrived to buy the drugs. This testimony is supported by the tape recording of the transaction made by law enforcement officials. Although Early claims he showed the informant the firearm because he was trying to sell the firearm as part of a separate transaction, the presence of the firearm clearly increased the risk of violence associated with the drug transaction. Thus, we uphold the district court's application of § 2D1.1(b)(1) to Early's sentence.

■ Finally, Early challenges the inclusion of two uncounseled juvenile convictions in calculating his criminal history.[2] In 1989 and 1990, Early was convicted as a juvenile of simple robbery and motor vehicle theft. The presentence report (PSR) stated that "[a]ttorney representation could not be determined." PSR at 4. Nonetheless, the PSR "presumed the defendant waived the right to counsel" because Minn.R.Crim.P. 5.02 (1977) required the court to offer counsel to juvenile defendants. *Id.*

■ "[I]t is clear that juvenile sentences [may be] considered in calculating criminal history." *United States v. Allen,* 64 F.3d 411, 413 (8th Cir.1995); *see also* U.S.S.G. § 4A1.2(d)(2) (expressly providing for crimi-

---

1. The fact that a proposed amendment to the Guidelines would have eliminated the 100:1 ratio has no effect on our analysis because Congress recently rejected the proposed amendment.

2. Without either of the two juvenile convictions, Early's sentencing exposure would be reduced from 120–150 months to 100–125 months, which would result in a sentence less than the 144–month sentence he received.

nal history points for any juvenile sentence imposed in the five years prior to the instant offense). It is now equally clear, at least for adult convictions, that a state conviction which is uncounseled may be used to enhance a sentence as long as counsel was validly waived or was not otherwise constitutionally required. *See Nichols v. United States,* —— U.S. ——, —— n. 4, —— n. 9, ——, 114 S.Ct. 1921, 1924 n. 4, 1925 n. 9, 1928, 128 L.Ed.2d 745 (1994).

 Neither the Sentencing Guidelines nor our precedents provide any basis for distinguishing between counseled and uncounseled juvenile convictions on a *per se* basis. Thus, we will only exclude the use of uncounseled juvenile convictions if there is some particularized defect in the juvenile proceedings. *Cf. Custis v. United States,* —— U.S. ——, ——, 114 S.Ct. 1732, 1738, 128 L.Ed.2d 517 (1994). For sentencing purposes, however, once the government has carried its initial burden of proving the fact of conviction, it is the defendant's burden to show a prior conviction was not constitutionally valid. *See United States v. Unger,* 915 F.2d 759, 761 (1st Cir.1990), *cert. denied,* 498 U.S. 1104, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991); *see also United States v. Porter,* 14 F.3d 18, 19 (8th Cir.1994) (noting that the defendant, who had signed a form waiving his right to court-appointed counsel, "failed to offer any support for his bare allegation that he waived his constitutional rights unknowingly and involuntarily").

 In inquiring whether Early's juvenile proceedings were defective, we assume that at least one of Early's juvenile offenses required the provision of counsel under *Scott v. Illinois,* 440 U.S. 367, 373–74, 99 S.Ct. 1158, 1161–62, 59 L.Ed.2d 383 (1979), and *In re Gault,* 387 U.S. 1, 41–42, 87 S.Ct. 1428, 1451–52, 18 L.Ed.2d 527 (1967).[3] In this case, the only evidence Early offered was that he did not recall waiving his right of counsel in the two juvenile proceedings in 1989 and 1990.

In such circumstances, we find the district court did not clearly err in finding waiver on the basis of the general rule and practice in Minnesota courts making counsel available to indigent juveniles. *See United States v. Dickens,* 879 F.2d 410, 412 (8th Cir.1989).

For the foregoing reasons, the judgment is AFFIRMED.

---

**3.** At oral argument, the government contended this case fell within the scope of *Nichols,* —— U.S. at ——, 114 S.Ct. at 1928, namely, cases in which the provision of counsel was not required, because the record did not show Early had been confined as a juvenile. The record shows, however, Early was "[s]entenced to" and later "[r]eleased from" the Hennepin County Home School, PSR at 4, and thus we assume the provision of counsel was required, absent a constitutionally-effective waiver.