# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-4050

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Henry R. Valdez, | * | |
| | * | |
| Appellant. | * | |

_____

No. 97-4075

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Damion E. Johnson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 16, 1998
Filed: June 1, 1998

_____

Before McMILLIAN, BOWMAN,[1] and MURPHY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Damion Johnson and Henry Valdez were tried jointly for attempted bank robbery, see 18 U.S.C. § 2113 (1994), and using a firearm during a crime of violence, see id. § 924(c)(1) (1994). A jury convicted each on both counts. Following the trial, the District Court[2] sentenced Johnson to 97 months' imprisonment on the bank robbery conviction to be followed by 120 months' imprisonment on the weapons conviction and sentenced Valdez to 175 months' imprisonment on the bank robbery conviction to be followed by 120 months' imprisonment on the weapons conviction. Each defendant appeals. For purposes of briefing and argument, the appeals have been consolidated. We affirm.

I.

Shortly after 7:00 a.m. on October 1, 1996, bank president John Barry arrived at Oak Creek Bank in Valparaiso, Nebraska, to open for the business day. Shortly after he unlocked and entered the bank, two men entered and confronted Barry. The two men were wearing over their faces dark stocking caps with jaggedly cut eye holes. One was carrying a shotgun and the other was carrying a bag. The two ordered Barry to open the bank vault and threatened Barry by telling him he would never see his granddaughter again. Before Barry could open the vault, another bank employee entered the bank and discovered the robbery. This prompted the two men to flee, speeding away in a red pick-up truck.

_____

[1]The Honorable Pasco M. Bowman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 18, 1998.

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

That same morning at approximately 7:30 a.m., a dispatcher alerted Officer Stanley Funky to the attempted robbery that had just occurred and described both the vehicle and the male suspects involved. Officer Funky exited the interstate that he had been patrolling and began traveling a gravel road en route to Valparaiso. At 7:46 a.m., Officer Funky observed two male subjects traveling the opposite direction in a red pick-up truck about six miles south of Valparaiso. Believing that the pick-up truck matched the dispatcher's description, Officer Funky turned around and began following the truck. The truck accelerated, so Officer Funky activated his red lights and siren. A chase ensued that lasted several miles and reached speeds of seventy to eighty miles per hour. In the meantime, two other officers had created a roadblock in the expected path of the pick-up truck. As the truck approached the roadblock, one of the troopers fired a round from his shotgun at the truck. Only then did the truck stop, whereupon Johnson and Valdez were arrested.

Pursuant to the arrest, officers seized from Johnson's pocket a butterfly fold-out knife and from the pick-up truck two black stocking caps with roughly cut eye holes, a cloth duffel bag, and a sawed-off shotgun. The pick-up truck had been reported stolen just a few hours before the robbery took place.

At the police station, FBI Agent Ronnie Ott and Nebraska State Patrol Sergeant Rod Getting informed Valdez of his Miranda rights. Valdez agreed to speak to the officers and signed a written waiver. Soon after the questioning began, Valdez requested an attorney. The interview immediately ceased. A few moments later, Valdez stated that he had changed his mind and wanted to answer questions. Valdez went on to provide a detailed account of the attempted robbery. In this confession, however, Valdez never named the other party with whom he was involved in the robbery. Instead, Valdez referred to the other individual as his accomplice. Valdez admitted that he and his accomplice stole the pick-up truck, purchased the stocking caps, cut eye holes in the stocking caps with a butterfly knife, waited in the bushes at

the bank for the bank president to arrive, and then entered the bank in an attempt to execute the robbery.

## II.

Valdez raises two issues separate from those raised by Johnson. Valdez first argues that his confession was not voluntary and therefore should not have been admitted as evidence against him. Valdez claims that, after he requested counsel and the interrogation ceased, the officers held up some papers and stated that Johnson had already told them everything. Only then, Valdez contends, did he change his mind and decide to talk. Valdez further claims that he confessed to the robbery without being readvised of his Miranda rights. The government contends, however, that the agents never held up papers indicating that Johnson had already spoken with them. Rather, when the interrogation was initially terminated, the government claims that the agents stood up to leave, and it was then that Valdez stated that he had changed his mind and wanted to talk. The government further asserts that Valdez was readvised of his Miranda rights and waived them a second time.

The voluntariness of a confession is a question of law and thus entitled to de novo review. See Miller v. Fenton, 474 U.S. 104, 115 (1985). A district court's factual findings about the circumstances surrounding a confession, however, are reviewed only for clear error. See United States v. Hornbeck, 118 F.3d 615, 618 (8th Cir. 1997). To determine the voluntariness of Valdez's confession, the District Court held a Jackson v. Denno[3] hearing wherein both Agent Ott and Valdez testified as to their version of the facts surrounding the confession.[4] The court specifically found Valdez to be "totally incredible," Trial Tr. at 428, and therefore believed the government's version.

---

[3]Jackson v. Denno, 378 U.S. 368, 376-77 (1964).

[4]Sergeant Getting had been injured in an explosion just a few days before the trial started. As a result, he was unable to testify.

We find no clear error in the District Court's findings of fact, and our de novo review of the legal issue of the voluntariness vel non of Valdez's confession proceeds on the basis of those findings.

Valdez began making a confession to the officers after he had been informed of his Miranda rights and he had signed a written waiver. Valdez then asked for an attorney, and the interrogation ceased. Once an accused requests counsel, no further interrogation may take place until counsel has been made available or "unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). Further, the communication initiated by the accused satisfies Edwards only if it relates to the investigation. See Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983) (plurality opinion). In this case, Valdez himself initiated further communication by telling the agents as they were leaving the room that he had changed his mind and wanted to answer questions. Moreover, it was clear that Valdez wanted to talk about the attempted robbery. Valdez then was readvised of his Miranda rights, waived them again, and confessed to the attempted robbery. We hold that Valdez's confession was made knowingly and voluntarily.[5]

The second issue Valdez separately raises relates to his sentencing: whether the District Court erred in denying him a downward departure based on diminished capacity. The sentencing guidelines provide:

---

[5]Even if we believed Valdez that he was not advised of his rights under Miranda a second time, we would hold the same. There is nothing to suggest that the interrogation would have caused Valdez "to forget the rights of which he had been advised and which he had understood moments before." Pittman v. Black, 764 F.2d 545, 547 (8th Cir.) (quoting Wyrick v. Fields, 459 U.S. 42, 49 (1982)), cert. denied, 474 U.S. 982 (1985).

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity[,] . . . a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense . . . .

U.S. Sentencing Guidelines Manual § 5K2.13 (1995). To be considered for a downward departure under this section, the defendant must have committed a nonviolent offense. Valdez argues that, because the shotgun used in the attempted robbery was not loaded and his accomplice was carrying the weapon, his commission of the robbery should be considered nonviolent. We reject this argument and hold that Valdez was not entitled to a downward departure for diminished capacity. See United States v. Mayotte, 76 F.3d 887, 889 (8th Cir. 1996) (holding that "[defendant's] commission of the offense of bank robbery precludes any 'diminished capacity' reduction" under § 5K2.13).

## III.

Johnson raises two arguments apart from those set forth by Valdez. First, under a theory different from Valdez's, Johnson takes issue with the admissibility of Valdez's confession. At trial, the substance of Valdez's confession was offered through the testimony of Agent Ott. The court instructed the jury both before it heard Ott's testimony and after the trial, as part of the jury instructions, not to consider the confession as evidence against Johnson. Ott also told the jury that Valdez would not identify in his confession the person who accompanied him during the robbery. And just as Valdez had done in giving his confession, Ott referred to the unidentified companion as Valdez's accomplice. Thus, Johnson's name never had to be redacted from Ott's testimony because Valdez never had mentioned Johnson by name in his confession. The only part of Valdez's confession relevant to this discussion was the reference to Valparaiso as being the accomplice's home town, which Ott omitted from his testimony.

Johnson contends that the confession was admitted in violation of his Sixth Amendment right to confront and cross-examine witnesses against him. More specifically, Johnson alleges a Bruton violation. See Bruton v. United States, 391 U.S. 123 (1968). In Bruton, the Supreme Court held that limiting instructions are not constitutionally adequate when "powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." Id. at 135-36. The Supreme Court later held in Richardson v. Marsh, 481 U.S. 200, 211 (1987), that a proper limiting instruction is constitutionally adequate when "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."

We have interpreted Bruton as prohibiting the presentation of a redacted statement that "draws the jury's attention to the fact that a name was omitted and invites the jury to fill in the blank." United States v. Long, 900 F.2d 1270, 1280 (8th Cir. 1990) (citing United States v. Garcia, 836 F.2d 385, 390-91 (8th Cir. 1987)). We find constitutionally problematic cases "in which the redacted statement alerts the jury to the fact that a name available to the prosecution has been purposely omitted . . . [T]his may improperly lead the jury to infer that the omitted name must be the defendant's." Garcia, 836 F.2d at 390; see also Gray v. Maryland, 118 S. Ct. 1151, 1156 (1998) (holding that "redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted" render the admission of a codefendant's confession unconstitutional).

Valdez never mentioned in his confession the name of the person with whom he had attempted the robbery, and Agent Ott told this fact to the jury. We thus are not presented with the situation in which a name was actually omitted in the redacted confession, so we are not concerned with the difficulties presented in that circumstance. See Garcia, 836 F.2d at 391. We therefore look to whether the codefendant's confession incriminates the defendant "on its face," United States v. Flaherty, 76 F.3d 967, 972 (8th Cir. 1996) (citing Richardson, 481 U.S. at 211), and inquire whether the

redacted confession "itself implicates the defendant; there is no violation where the confession implicates the defendant only when linked to other evidence." United States v. Jones, 101 F.3d 1263, 1270 (8th Cir. 1996) (citing United States v. Miller, 995 F.2d 865, 867 (8th Cir.), cert. denied, 510 U.S. 1018 (1993)), cert. denied, 117 S. Ct. 1346 and 117 S. Ct. 1566 (1997).

On its face, Valdez's confession does not itself implicate Johnson. Only by linking the confession to other evidence could a jury infer that the accomplice was in fact Johnson. Further, the prosecution did not improperly "[lead] the jury straight to the conclusion" that the accomplice was Johnson. Long, 900 F.2d at 1280. In fact, Valdez's confession was redacted to omit his statement that his accomplice was from the small town of Valparaiso, thus minimizing the chance that the jury would infer that the accomplice was Johnson, who was actually from Valparaiso. We find no Bruton violation and hold that the limiting instruction provided by the court to the jury was constitutionally adequate.

Second, Johnson argues that the District Court erred by including a prior, uncounseled juvenile adjudication for burglary and criminal mischief in his criminal history score. Prior to Johnson's sentencing, the District Court held a hearing on the issue and received evidence, including testimony from Johnson. We review the court's findings for clear error. See United States v. Early, 77 F.3d 242, 245 (8th Cir. 1996) (per curiam).

A defendant can collaterally attack during federal sentencing an earlier state court conviction only on the ground that it was obtained in violation of the defendant's right to counsel. See United States v. Jones, 28 F.3d 69, 70 (8th Cir. 1994) (per curiam). After the government proves the fact of conviction, the burden then shifts to the defendant to show that the prior conviction is not constitutionally valid. See Early, 77 F.3d at 245. Johnson claims that his right to counsel was violated because, he asserts, his waiver of counsel at the juvenile proceeding was not voluntary. For

support, Johnson states that at the time of the juvenile adjudication he was only seventeen, inexperienced with the juvenile justice system, and that he knew his mother and stepfather wanted him to resolve the matter quickly.

Johnson's juvenile court records show that at his adjudicatory hearing the court properly advised Johnson and his mother of his rights and that he waived his right to appointed counsel at that time. At his disposition hearing held some months later, Johnson appeared with his mother and an attorney. Neither Johnson, his mother, nor his attorney sought at that time to set aside the adjudication because of an invalid waiver of counsel. There is simply no support in the record for Johnson's bare assertions that his waiver was involuntary. We therefore hold that the District Court did not clearly err in concluding that Johnson failed to establish that his waiver of counsel was invalid. Accordingly, it was proper for the District Court to use Johnson's juvenile adjudication in determining his criminal history category.

IV.

The remaining issues are raised by both Johnson and Valdez. They first argue that the District Court erred in concluding that the gun used in the robbery was a short-barreled shotgun. The firearm seized from the truck and later admitted into evidence was a fully functional "Ted Williams model 200, pump 12 gauge shotgun." Trial Tr. at 362. The barrel of the gun had been shortened to sixteen inches, and the stock had been partially cut off, leaving a "pistol grip-type stock." Id. at 365. The overall length of the firearm was twenty-seven and one-half inches.

Both Johnson and Valdez received a mandatory ten-year sentence under 18 U.S.C. § 924, which provides in part:

Whoever, during and in relation to any crime of violence . . . uses or carries a firearm, shall, in addition to the punishment provided for such

-9-

crime of violence[,] . . . be sentenced to imprisonment for five years, and if the firearm is a . . . short-barreled shotgun, . . . to imprisonment for ten years . . . .

18 U.S.C. § 924(c)(1). The ten-year mandatory sentence thus requires that the firearm be a "short-barreled shotgun," which is defined as:

[A] shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (whether by alteration, modification or otherwise) if such a weapon as modified has an overall length of less than twenty-six inches.

Id. § 921(a)(6). This statute proscribes the use of two sub-categories of weapons: 1) a shotgun with a barrel shorter than eighteen inches, and 2) any weapon made from a shotgun that is shorter than twenty-six inches. See United States v. Hall, 972 F.2d 67, 70 (4th Cir. 1992). The second sub-category is inapplicable because the firearm at issue is longer than twenty-six inches.

Johnson and Valdez argue that the first sub-category is also inapplicable. They concede that the barrel of the firearm is less than eighteen inches, but they claim that the firearm is not a shotgun within the meaning of the statute. A "shotgun" is defined as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder." 18 U.S.C. § 921(a)(5). The two maintain that, because the firearm now has a pistol grip, it is no longer intended to be fired from the shoulder and, therefore, falls outside the scope of the definition. The District Court rejected this argument, interpreting the statute to include the firearm. We review de novo a district court's statutory interpretation. See United States v. Williams, 136 F.3d 547, 550 (8th Cir. 1998).

There is no dispute that the shotgun as originally designed and made was intended to be fired from the shoulder. We conclude that the statute applies to this

-10-

firearm even though, after the stock had been sawed off to create a pistol grip, it no longer could be fired from the shoulder. The statute, by its express terms, applies to weapons "<u>designed</u> or redesigned, <u>made</u> or remade." 18 U.S.C. § 921(a)(5) (emphasis added). We therefore agree with the District Court that the statute requires only that a firearm be intended at some point during its design or redesign, making or remaking to be fired from the shoulder. The firearm at issue clearly meets this requirement. The District Court correctly sentenced Johnson and Valdez to an additional ten years pursuant to § 924(c)(1).

Johnson and Valdez next contend that the District Court erred in enhancing their sentences for reckless endangerment during their flight from police officers. The sentencing guidelines provide for a two-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S. Sentencing Guidelines Manual § 3C1.2 (1995). "Reckless" is when a "defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." <u>Id.</u> § 2A1.4 (1995), comment. (n.1). The District Court found that Johnson and Valdez recklessly endangered the lives of other motorists and at least three state troopers. We review a district court's finding of recklessness for clear error. <u>See</u> <u>Hobbs v. Evans</u>, 924 F.2d 774, 775 (8th Cir. 1991) (per curiam).

We first note that Valdez's sentence can be enhanced under the reckless-endangerment provision even though Johnson was identified as the driver of the truck. <u>See</u> U.S. Sentencing Guidelines Manual § 3C1.2, comment. (n.5) ("Under this section, the defendant is accountable . . . for conduct that he aided or abetted . . . .). At trial, Agent Ott testified that Valdez admitted to waving the shotgun during the car chase in the hope that whoever was chasing them would see the shotgun and back off. <u>See</u> Trial Tr. at 458. That testimony, coupled with the fact that Valdez presented no evidence

to the contrary, leads us to conclude that Valdez aided and abetted Johnson during the course of the chase.

We now turn to the question of whether Johnson and Valdez's actions during their flight recklessly created a substantial risk to others. Johnson attempted to flee from police by driving seventy to eighty miles per hour on a gravel road for at least four miles with Officer Funky in pursuit. The chase ended only after Johnson and Valdez reached a roadblock set up by two other officers and a round from a shotgun was fired at the truck. We believe the District Court did not clearly err in finding that this constituted reckless endangerment. See United States v. Sykes, 4 F.3d 697, 700 (8th Cir. 1993) (per curiam) (upholding finding of reckless endangerment under § 3C1.2 where police had to pursue defendant after defendant sped off in vehicle and police had to force defendant off the road to apprehend him). As the court found, the officers involved in the chase and motorists and pedestrians in the area were placed at substantial risk. Johnson and Valdez claim that their conduct falls short of recklessness because the flight took place in daylight, it occurred on county roads in a rural area, and no other vehicles or pedestrians were encountered during the pursuit. We find this argument meritless. We do not interpret § 3C1.2 to require that a high speed chase occur at night, in an urban area, or that any other vehicles actually ended up in harm's way. Further, their argument does not account for the risk to the officers involved. The District Court did not err in enhancing Johnson and Valdez's sentences for reckless endangerment.

Finally, Johnson and Valdez contend that their sentences should not have been enhanced for obstruction of justice. The sentencing guidelines provide for a two-level sentence enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S. Sentencing Guidelines § 3C1.1 (1995). This can include an attempt to harm a witness. See id. § 3C1.1, comment. (n.3(a)); United States v. Adipietro, 983 F.2d 1468, 1479 (8th Cir. 1993).

Here, the government moved to enhance the defendants' sentences on the ground that they had attempted to harm a witness--the bank president. The District Court heard evidence, including testimony from Johnson, and found that Johnson and Valdez willfully attempted to have the bank president harmed. We will review this finding for clear error. See United States v. Moss, 138 F.3d 742, 745 (8th Cir. 1998). We will review de novo the question of whether the defendants' conduct warrants an obstruction-of-justice enhancement. See United States v. Eagle, 133 F.3d 608, 611 (8th Cir. 1998).

The government presented evidence that Johnson and Valdez attempted to have the bank president harmed while they were awaiting trial and in custody at the Lancaster County Jail in Lincoln, Nebraska. Melvin Denny Lear, a friend of both Johnson and Valdez, testified that he had a phone conversation with Johnson in which Johnson talked about wishing something bad would happen to the bank president. Lear also testified that he had phone conversations with Valdez in which Valdez asked Lear whether he could get a gun and Valdez talked about getting a bunch of guys and doing something to the bank president. Lear denied that any of the threats were serious. Lear further denied taking any steps to harm the bank president. The District Court found that, as to these denials, Lear was lying.

Several other witnesses testified. Jim Hughes, Johnson's uncle, testified that, during a conversation with Johnson at the jail, Johnson told Hughes that he wanted to escape and kill the bank president. Hughes also testified that, during a conversation with Lear, Lear said to Hughes that Johnson talked about wanting to escape in order to "do the bank manager," which Hughes interpreted as meaning to kill the bank manager. Sentencing Tr. at 82-83. Lisa Hanks testified that Lear asked her to drive Lear and his friends to Valparaiso "so that he could kick John Berry's [sic] [the bank president's] ass." Id. at 58. Robert Nelson also gave testimony about a conversation with Lear in which Lear "said he was going to get a couple other guys to go hurt some president and he wanted me to be involved in the beat down." Id. at 100. Nelson

testified that Lear explained that two of Lear's friends got "narked on." Id. at 101. Nelson recalled Lear naming Henry Valdez as one of those friends. Finally, Kenneth Anderson testified that he and a friend, Corky Graves, visited Valdez at the jail. On the way home from the jail, Graves said that Valdez had asked Graves to either "knock off the bank president or get in touch with someone who could." Id. at 119.

Johnson and Valdez claim that the testimony of Hughes, Hanks, and Nelson was not credible. A district court's credibility determinations, however, are "virtually unreviewable on appeal." United States v. Heath, 58 F.3d 1271, 1275 (8th Cir.), cert. denied, 516 U.S. 892 (1995). Based on the testimony of these witnesses, we conclude that the government, needing only to prove by a preponderance of the evidence that Johnson and Valdez attempted to have the bank president harmed, see United States v. Hammer, 3 F.3d 266, 272 (8th Cir. 1993), cert. denied, 510 U.S. 1139 (1994), satisfied its burden of proof, and that the District Court did not clearly err in its finding that the defendants attempted to have the bank president harmed. We further hold that this conduct is sufficient as a matter of law to warrant a two-level enhancement for obstruction of justice.

V.

We have considered all the issues that Johnson and Valdez have raised. We conclude that none has merit. In each of the appeals, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-