# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

Nos. 01-1220, 01-1221
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Michael T. Petersen, | * | District of South Dakota. |
| | * | |
| Appellee/Cross-Appellant. | * | |

_____

Submitted: October 16, 2001

Filed: January 10, 2002
_____

Before WOLLMAN, Chief Judge, LAY and RILEY, Circuit Judges.
_____

RILEY, Circuit Judge.

The government appeals the district court's sua sponte five-level downward departure involving Michael T. Petersen's convictions for assault, aggravated sexual abuse and burglary on an Indian Reservation. The court departed under 18 U.S.C. § 3553(b) and the United States Sentencing Guideline Manual (USSG) § 5K2.0, p.s., on the bases of (1) a mitigating circumstance of temporary insanity, and (2) the burglary and aggravated sexual abuse were atypical because they occurred in Petersen's own home with his wife and involved minimal force. We reverse and remand for resentencing within the applicable guidelines' sentencing range.

## I.    BACKGROUND

During the late evening hours of November 3, 1999, Petersen broke into the home of his estranged wife, Calley Petersen (Calley).  The couple had been separated for over a month, and Calley had started to pursue a divorce.  Because of an earlier physical assault by Petersen, a tribal judge had issued a temporary protection order against Petersen.  Calley had changed the lock on the front door of the residence, but not the back door which was four to five feet off the ground with no steps.  Although the couple had attended mediation in an attempt to reconcile, Calley terminated the mediation on November 3, 1999, and informed her attorney to proceed with a divorce.

After breaking into the home,  Petersen woke Calley by striking her repeatedly on the head with a flashlight.  The Petersens' four-year-old son was sleeping with Calley.  The boy woke up and said, "Why are you hitting my mommy?"  Petersen left the bedroom and Calley followed him into the hallway.  Petersen then approached her, put his hands around her neck, pushed her against the wall and choked her until she became unconscious.  When she regained consciousness, Calley asked Petersen to take her to the hospital, but he refused.  At that time, Calley noticed Petersen was wearing rubber doctor's gloves.

During these attacks, Calley suffered a dislocated shoulder, lacerations to her head, and bruises on her neck and shoulders.  Petersen then said he would take her to get help, but she had to get cleaned up first.  She unsuccessfully attempted to wash the blood from her head under the bathroom faucet.  Petersen ordered Calley to take a shower.  Petersen then helped her undress, undressed himself and followed Calley into the shower where he fondled her and, according to Calley, "proceeded to poke and prod" her.  Calley became sick and almost passed out.

Petersen told the four-year-old, who was also in the bathroom, to get towels.  Upon exiting the shower, Calley started to dress.  Petersen stopped her and took her to the bed.  After temporarily removing the child to his room, Petersen then returned

to Calley and, over her protest, raped her. During the assault, Petersen threatened to kill Calley if she divorced him. Calley testified she did not resist the rape because she feared Petersen would kill her.

After the rape, Petersen attempted to clean blood off the carpet in the hallway and also started the laundry to clean the bedding and his clothes. He changed into other clothes.

Petersen eventually agreed to take Calley to the hospital. He told Calley they must get their stories straight, and when asked what happened, she must say she had fallen and had then called Petersen for help. Petersen made Calley swear "on her grandmother's grave" not to tell what really happened. Before they left for the hospital, Petersen retrieved his truck from an unknown location. The truck was not parked in the driveway of the residence. At the hospital Calley reported the assaults to the hospital staff when she was alone with them.

Law enforcement officers testified at trial that an iron bar was found just inside a window near the front door of the residence. The window was missing its screen, which was found on the ground outside.

The attack took place near Eagle Butte, South Dakota, on the Cheyenne River Sioux Indian Reservation. Petersen is an American Indian and a member of the Cheyenne River Sioux Indian Tribe. A federal grand jury indicted him under 18 U.S.C. § 1153 on charges of assault with a dangerous weapon, assault with intent to commit murder, assault resulting in serious bodily injury, aggravated sexual abuse, and first degree burglary. After a five-day trial, a jury convicted Petersen of simple assault in violation of 18 U.S.C. § 113(a)(5); assault by striking, beating, or wounding in violation of 18 U.S.C. § 113(a)(4); aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a) and 2246(2)(A); and first degree burglary in violation of SDCL § 22-32-1.

At sentencing the district court adopted the factual findings contained in the presentence report and overruled Petersen's objections to the report as "all immaterial under the sentencing guidelines." The district court combined the aggravated sexual abuse and burglary counts pursuant to the USSG. The court first found a base offense level of 27 for criminal sexual abuse under USSG § 2A3.1. The base offense level was increased by two levels for serious bodily injury under USSG § 2A3.1(b)(4)(B) and adjusted upward by two levels for obstruction of justice under USSG § 3C1.1.[1] The district court assessed Petersen a four-level upward adjustment for aggravation pursuant to USSG § 2A3.1(b)(1) and 18 U.S.C. § 2241(a),[2] resulting in an adjusted offense level of 35. Petersen had a criminal history category of I.

The district court found "mitigating circumstances that were sufficiently unusual to take this case outside the 'heartland' (i.e., the level of force used during the assault was found to have been sufficient to cause great pain but beyond that, the force as to the sexual assault was non-existent[)]." The district court noted that "[f]or the defendant to have acted as he did during the course of the instant offenses, he exhibited some degree of temporary insanity." The court further found that "[t]he victim ultimately succumbed to the defendant's request for sexual intercourse because she was afraid of the defendant. The parties were still married." The court further

---

[1]In connection with this adjustment, the district court characterized Petersen's testimony at trial to be "the most implausible defense testimony" it had ever heard. Petersen testified he called to talk to his four-year old son at midnight on November 3, 1999. He stated that Calley told him she had fallen off of the porch and needed him to help her. When Petersen arrived at the house, he found Calley in the hallway. She then told him she loved him and did not want a divorce. Petersen testified Calley requested sexual intercourse, which he refused, then she pulled him on top of her and he complied.

[2]Aggravated sexual abuse by force or threat is defined in 18 U.S.C. § 2241(a) as, "knowingly caus[ing] another person to engage in a sexual act – (1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnaping."

found the burglary was atypical "with the defendant breaking into his own home, although in violation of a court order."

The district court, on its own motion, departed downward from the adjusted offense level of 35 (168 to 210 months) to a total offense level of 30 (97 to 121 months), for a total departure of over five years, based upon USSG §5K2.0. With a total offense level of 30, and a criminal history category of I, the district court sentenced Petersen to 100 months (8 years, 4 months) incarceration, followed by a term of five years of supervised release. The district court sentenced Petersen to six months on each of the assault counts to run concurrently with the sentence for the remaining counts.

## II.    DISCUSSION

We review the district court's interpretation of the sentencing guidelines de novo and its factual findings for clear error. United States v. Rohwedder, 243 F.3d 423, 425 (8th Cir. 2001). Additionally, "[w]e review the district court's decision to grant a downward departure for an abuse of discretion." United States v. Hasan, 245 F.3d 682, 684 (8th Cir. 2001) (en banc).

"A district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." Koon v. United States, 518 U.S. 81, 98 (1996). When a district court exercises its discretion based on an erroneous view of the law, it necessarily abuses its discretion. See Hasan, 245 F.3d at 684. "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." Koon, 518 U.S. at 100. Further, a district court commits an abuse of discretion "'when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the

court in weighing those factors commits a clear error of judgment.'" United States v. Huerta-Orozco, 272 F.3d 561, 566 (8th Cir. 2001) (citations omitted).

District courts have the authority to depart from the guidelines only in limited circumstances. United States v. Hendricks, 171 F.3d 1184, 1187 (8th Cir. 1999). A sentencing court may only impose a sentence outside the applicable guideline range, "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" USSG § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

In granting a downward departure, the district court at the time of sentencing, in open court, must state the reasons for a particular sentence with "the specific reason for the imposition of a sentence different from that described." See 18 U.S.C. § 3553(c)(2); see also United States v. Lang, 898 F.2d 1378, 1380 (8th Cir. 1990). Additionally, the district court must "explain why the guideline sentence is inadequate, identify specific factual basis for departure and explain why the resulting sentence is reasonable." Hendricks, 171 F.3d at 1188 (citation omitted).

The government contends the district court made an error of law by departing downward based on temporary insanity. Additionally, the government argues the district court made clear errors of judgment in finding the burglary and the rape were atypical. Petersen, on the other hand, contends the totality of factors converge to remove this case from the heartland of cases, even if the individual factors relied upon for the departure are insufficient when isolated. Petersen argues the sentence should be affirmed.[3]

---

[3]Petersen filed a notice of cross-appeal challenging his conviction and sentence. However, he has raised no issues on appeal aside from his opposition to the government's appeal.

## A. Temporary Insanity

While the guidelines do not address "temporary insanity" as a basis for departure, they do specifically address "a significantly reduced mental capacity." USSG § 5K2.13, p.s.[4] Thus, the Sentencing Commission adequately considered mental capacity as a basis for downward departure and USSG § 5K2.13 provides the only basis for such a departure, "'foreclosing consideration of diminished mental capacity under section 5K2.0.'" Premachandra v. United States, 101 F.3d 68, 70 (8th Cir. 1996) (quoting United States v. Dillard, 975 F.2d 1554, 1555 (8th Cir. 1992)).

A defendant must have committed a nonviolent offense to be considered for a downward departure under USSG § 5K2.13. United States v. Valdez, 146 F.3d 547, 551 (8th Cir. 1998). The jury convicted Petersen of multiple violent offenses. Accordingly, a departure based upon a reduced mental capacity or "temporary insanity" in the instant case is not authorized by the guidelines and is contrary to law.

The district court did not explicitly rely upon USSG § 5K2.13, but cited only USSG § 5K2.0 for its departure based on temporary insanity. Although this was error, as described above, we find the district court did not make adequate factual findings that could support such a departure in any event. See, e.g., United States v. Jackson, 56 F.3d 959, 961 (8th Cir. 1995) (district court reviewed medical and psychological information prior to considering downward departure).

---

[4]USSG § 5K2.13 is a policy statement. "Policy statements are binding only if they interpret a guideline or prohibit district courts from taking a specified action." United States v. Goings, 200 F.3d 539, 543 (8th Cir. 2000) (citing Stinson v. United States, 508 U.S. 36, 42 (1993)). Application Note 1 in the commentary following § 5K2.13 supplies this definition: "'Significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior compromising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."

Facts considered by the court at sentencing must be proved by a preponderance of the evidence. United States v. Plumley, 207 F.3d 1086, 1090 (8th Cir. 2000). The defendant normally bears the burden of establishing a factor that would result in a reduction of his sentencing range. See United States v. Dinges, 917 F.2d 1133, 1135 (8th Cir. 1990).

The district court adduced no evidence with respect to Petersen's mental capacity.[5] The judge stated that he believed Petersen perpetrated the offenses because he "did not want the divorce, was attempting to reconcile with his wife, [and] was attempting to keep his child on the reservation where he lived." The district court thus reasoned that Petersen's motivation was not the same as a typical sexual assault and abuse.[6] The district judge apparently relied only on his experience with divorce

_____

[5]While the presentence report contains information that Petersen was seeing a mental health professional and had threatened suicide, Petersen objected to the inclusion of such information in the report. The district court overruled the objection stating the information was immaterial to the guidelines sentencing determination.

[6]The district court correctly placed no reliance on aberrant behavior for the departure. While the 1998 sentencing guidelines did not address aberrant behavior, we defined it as "a spontaneous and seemingly thoughtless act." See United States v. Allery, 175 F.3d 610, 614 (8th Cir. 1999) (citations omitted). The November 1, 2000 sentencing guidelines, however, do address aberrant behavior in USSG § 5K2.20, defining it as, "a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." USSG § 5K2.20, cmt. n.1. Section 5K2.20 precludes a downward departure on this basis if the offense involved serious bodily injury. USSG § 5K2.20(1).

The district court acknowledged Petersen had a history of assaulting women, including prior assaults on Calley, on a minor, and on a family friend. Additionally, the evidence shows Petersen parked his vehicle away from the residence, brought an iron bar for use in the burglary, and wore rubber gloves during the assaults. Therefore, we find his conduct could not be described as spontaneous, thoughtless,

cases as a trial attorney, reciting his familiarity "with cases where people are involved in divorce cases and who probably suffer some degree of temporary insanity." Whether or not the court's observation is true in general or in this case, beating, choking, threatening to kill and raping a spouse are neither excused nor mitigated by a pending divorce proceeding. The judge recognized that although Petersen's conduct occurred under "a certain degree of temporary insanity," such insanity would not have constituted a legal defense.

We find the district court's factual finding of temporary insanity is not supported by the record and is clearly erroneous. Therefore, we reverse and remand for resentencing without consideration of "temporary insanity" or reduced mental capacity on the part of Petersen.

### B. Atypical Burglary

The district court determined Petersen's act of burglary was atypical under USSG § 5K2.0 because, "it is not a typical burglary where you break into your own property, into your own home." The district court acknowledged, however, that there was a court order in place barring Petersen from entry to the premises.

While we agree engaging in a burglary of one's own home would not be typical, we do not agree that the conduct in this case, in light of the protection order, supports a downward departure. Certain facts in this case are typical of burglary: Petersen parked his vehicle off of the premises implying concealment, he forced entry into the home, and he wore rubber gloves while inside the home. Petersen's right of access to the home had been temporarily restrained by court order. We find the departure was unreasonable in scope and an abuse of discretion.

---

without significant planning or a deviation in character. Accordingly, Petersen would not be eligible for the departure under either the 1998 or the 2000 sentencing guidelines manual.

## C.    Minimal Use of Force

The district court found, as a mitigating factor, that the force used during the rape was minimal and departed downward pursuant to USSG § 5K2.0.  In making this finding, the district court found the force used was associated with the beating, rather than with the rape.[7]

We find this reasoning is misplaced.  A finding of minimal force cannot be reconciled with the evidence.  A departure for minimal use of force in these circumstances cannot be supported by any interpretation of the case law.  In a recent case, we found no abuse of discretion and affirmed a downward departure for minimal use of force where the victim awoke to find the defendant raping her.  United States v. Allery, 175 F.3d 610 (8th Cir. 1999).  In Allery, we found the defendant used "virtually the least amount of force" to sustain a conviction for the offense of abusive sexual contact by use of force under 18 U.S.C. § 2244(a)(1).  Id. at 613.  The force used by Petersen against Calley is significantly different.  Petersen used a flashlight to beat Calley, he strangled her until she was unconscious, he dislocated her

---

[7]Specifically, the district court made the following determinations:

> The force involved here was largely in connection with the beating which this defendant administered to the victim.  And I have no doubt that he did administer that beating.  Dislocated her shoulder and struck her with a flashlight causing her to, obviously, suffer great pain.  But beyond that, the force, here, was minimal and, thus, that is also a circumstance that is mitigating.  She succumbed, of course, to his request for sexual intercourse certainly because she was afraid.  With her frame of mind and what she had been put through obviously she would have had no interest at all in having sexual intercourse.  And, of course, a husband does not have a right to demand that of a wife, or anyone else, of course, if the wife says no.  And, so, there's no doubt that he again is guilty of aggravated sexual abuse.

shoulder, he sexually assaulted and then raped Calley, and he threatened to kill Calley in order to satisfy his desires. Finally, the fact that the rape victim was the wife of the offender under these circumstances does not warrant a downward departure. Cf. Arcoren v. United States, 929 F.2d 1235, 1246-48 (8th Cir. 1991) (affirming upward departure based upon physical restraint, where victim was defendant's estranged wife).

We find it unreasonable and capricious to reconcile the jury's finding here of aggravation under 18 U.S.C. § 2241(a) with a downward departure for minimal force. Furthermore, we are unconvinced that Petersen's conduct during the aggravated sexual assault falls outside the heartland. Accordingly, we find the district court's downward departure for minimal use of force is an abuse of discretion.

## III.  CONCLUSION

After reviewing the district court's downward departure under the abuse-of-discretion standard adopted in Koon, we find the district court's departure is not supported by the record. The departure does not comport with the sentencing guidelines' goal "to reduce unjustified disparities and so reach toward the evenhandedness and neutrality that are the distinguishing marks of any principled system of justice." Koon, 578 U.S. at 113.

We reverse the district court's sua sponte grant of a five-level downward departure. This action is remanded to the district court for resentencing within the applicable guidelines' sentencing range.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-