# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2792

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Daniel E. Woods, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:   December 16, 2003

Filed:   February 27, 2004

_____

Before MELLOY, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Daniel Woods appeals the district court's[*] ruling that he was ineligible as a matter of law for a downward departure under United States Sentencing Guidelines Section 5K2.13 based on alleged diminished mental capacity, because he was convicted of bank robbery.  Because we feel bound by circuit precedent, we affirm the district court.

_____

[*]The Honorable Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri.

## I.

Daniel Woods pleaded guilty to the August 8, 2002, robbery of the North Star Bank in Liberty, Missouri, in violation of 18 U.S.C. § 2113(a). Woods entered the bank and handed one of the tellers a note stating that he was to be given all of the one-hundred dollar bills. The note also stated that the teller should "do it now." The teller stated she did not have any one-hundred dollar bills in her drawer, and Woods instructed her to go get the money immediately. As the teller attempted to retrieve the money from the vault, Woods told her that time was "running short." Woods was unarmed at the time of robbery, but he eventually walked out of the bank with $19,800. As part of his guilty plea, Woods admitted that his conduct satisfied the element of "intimidation" in § 2113(a).

Prior to his sentencing hearing, Woods filed a motion for downward departure pursuant to USSG § 5K2.13. This policy statement provides authority to reduce the sentence of certain defendants who suffered from diminished mental capacity at the time of their offense. The discretion contemplated by § 5K2.13 is limited, however, and downward departure is prohibited where, among other reasons, "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." USSG § 5K2.13 (2003).

At Woods's sentencing hearing, the government maintained that a downward departure was precluded by this court's precedents. The government also urged that a bank robbery offender should be ineligible for a departure under § 5K2.13, as amended in 1998, because the crime always presents "a serious threat of violence." Woods argued that the text of amended § 5K2.13 requires a court to make a fact-specific inquiry into each offense, regardless of the type of crime, to determine if a downward departure is available.

The district court held that it did not have authority to depart downward in Woods's case. The court concluded that our precedent held that bank robbery in the presence of an individual is always a crime of violence, and that a defendant who commits bank robbery is ineligible for a downward departure under § 5K2.13 as a matter of law. The court imposed a sentence of 33 months imprisonment and a term of three years supervised release, along with an order of restitution in the amount of $19,800.

This court reviews a district court's construction of the Sentencing Guidelines *de novo*. *United States v. Lewis*, 249 F.3d 793, 795 (8th Cir. 2001). Because the district court ruled that it lacked authority to depart under § 5K2.13, we have jurisdiction to review that legal determination. *United States v. Lopez-Salas*, 266 F.3d 842, 849 (8th Cir. 2001).

II.

This case turns on an interpretation of USSG § 5K2.13, the text of which was substantially changed from its original form by an amendment effective November 1, 1998. USSG App. C, amdt. 583 (Nov. 1998). Before this amendment, the section provided as follows:

> If the defendant *committed a non-violent offense* while suffering from significantly reduced mental capacity not resulting from the voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

USSG § 5K2.13 (1997) (emphasis added).

Under the pre-amendment guideline, courts of appeals were divided on whether a "non-violent offense" necessarily excluded a "crime of violence," as defined in the

career offender guideline, USSG § 4B1.2(a). Prior to the 1998 amendment, our court, along with a number of other circuits, held that crimes meeting the definition of "crime of violence," including bank robbery under 18 U.S.C. § 2113(a), were categorically ineligible for downward departure under § 5K2.13. *See, e.g., United States v. Mayotte*, 76 F.3d 887, 889 (8th Cir. 1996) ("We believe that a 'non-violent' offense necessarily excludes a 'crime of violence.'"); *United States v. Poff*, 926 F.2d 588, 591 (7th Cir. 1991) (en banc); *United States v. Maddalena*, 893 F.2d 815, 819 (6th Cir. 1989). Other circuits did not adopt this *per se* approach, holding instead that each defendant's offense must be examined individually to determine whether it was "non-violent" and whether downward departure was appropriate. *See, e.g., United States v. Chatman*, 986 F.2d 1446, 1450 (D.C. Cir. 1993) ("[W]e believe that the sentencing court has broad discretion under section 5K2.13 to examine all the facts and circumstances of a case to determine whether a particular offense was in fact 'non-violent.'"); *United States v. Weddle*, 30 F.3d 532, 540 (4th Cir. 1994).

In an effort to address the conflict among the circuits and give courts more specific guidance regarding diminished capacity departures, the Sentencing Commission amended § 5K2.13 in 1998. The pertinent section of the amended guideline, as applicable to Woods's case, reads as follows:

> A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if . . . (2) *the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence* . . . . If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

USSG § 5K2.13 (2001) (emphasis added).

The Commission said it changed the policy statement to address "a circuit conflict regarding whether the diminished capacity departure is precluded if the defendant committed a 'crime of violence' as that term is defined in the career offender guideline." USSG App. C, amdt. 583 (Nov. 1998). The Commission explained that the new provision "replaces" the former policy statement, and "essentially represents a compromise approach to the circuit conflict." *Id.*

### III.

Mindful that "one panel is not at liberty to overrule a decision of another panel," *United States v. Prior*, 107 F.3d 654, 660 (8th Cir. 1997), our analysis necessarily begins with our precedent concerning USSG § 5K2.13. We are not bound to follow cases interpreting the old version of the policy statement; the intervening amendment in November 1998 renders those precedents inapposite. The government argues, however, that we should follow the decision in *United States v. Petersen*, 276 F.3d 432 (8th Cir. 2002), which considered § 5K2.13 in the context of an offense committed after November 1998. The district court concluded that *Petersen* precluded a departure under § 5K2.13 in a bank robbery case as a matter of law, and we feel obliged to agree.

The defendant in *Petersen* was convicted of first degree burglary, aggravated sexual abuse, assault by striking, beating or wounding, and simple assault in connection with an attack on his estranged wife in November 1999. *Petersen*, 276 F.3d at 434-35. Because the offense was committed after November 1998, the new version of § 5K2.13 applied to Petersen's sentencing. *See* USSG § 1B1.11. At sentencing, the district court departed downward from the applicable sentencing guideline range based on what it termed "temporary insanity." On appeal, our court explained that § 5K2.13 provides the only basis for a departure based on the defendant's mental capacity, and thus considered whether the district court's departure could be sustained under § 5K2.13. *Petersen*, 276 F.3d at 437.

In holding that a departure was not authorized pursuant to § 5K2.13, the *Petersen* panel reasoned as follows:

> A defendant must have committed a nonviolent offense to be considered for a downward departure under USSG § 5K2.13. *United States v. Valdez*, 146 F.3d 547, 551 (8th Cir. 1998). The jury convicted Petersen of multiple violent offenses. Accordingly, a departure based upon a reduced mental capacity or "temporary insanity" in the instant case is not authorized by the guidelines and is contrary to law.

*Petersen*, 276 F.3d at 437. The *Valdez* decision cited by the panel was a bank robbery case. There, the court held (under former § 5K2.13) that commission of bank robbery precludes a departure, because only those who committed a "nonviolent offense" were eligible. *Valdez*, in turn, followed *United States v. Mayotte*, 76 F.3d at 889, which held that the terms "nonviolent offense" in former § 5K2.13 and "crime of violence" in § 4B1.2 were mutually exclusive.

Given the broad reasoning of *Petersen*, including its use of the phrase "nonviolent offense" and its citation of *Valdez*, we feel bound to uphold the district court's ruling in this case. To be sure, the *Petersen* panel could have decided its case on narrower grounds. The facts and circumstances of Petersen's offense indicated a need to protect the public because the offense involved "actual violence" (assault and sexual abuse), so he was ineligible for departure under the plain language of amended § 5K2.13. But the categorical reasoning that led to the panel's holding was clearly broader, and we think the orderly disposition of cases by our court requires that a panel follow not only the result of a previous panel decision, but also the essential reasoning that underlies its holding. *See*, *e.g.*, *United States v. Hoggard*, 254 F.3d 744, 746 (8th Cir. 2001) ("This panel is bound by the reasoning of *Bausch*, and we therefore must reject the defendant's Commerce Clause challenge."); *United States v. Farnsworth*, 729 F.2d 1158, 1161 (8th Cir. 1984) ("We are bound to follow the reasoning of our own Court in *Sostarich* and reject the holding of *United States v. Calhoun, supra*.").

Although we affirm the district court based on *Petersen*, we register our respectful disagreement with the reasoning (though not the result) of that case. The *Petersen* decision restated this court's interpretation of the pre-November 1998 guideline. When the Sentencing Commission amended § 5K2.13, it identified our court's interpretation of the old policy statement as one of two divergent views that created a conflict in the circuits. We think the Commission's "compromise approach" to resolving that conflict means it did not intend to endorse one of the two polar positions, and that the broad categorical rule stated by *Petersen* and *Valdez* did not survive the amendment. *See also* Notice of Proposed Amendments to Sentencing Guidelines, Policy Statements, and Commentary, 63 Fed. Reg. 602, 632 (Jan. 6, 1998) (describing amended § 5K2.13 as an "Option Three" that was distinct from "Option One" represented by *Mayotte* and *Poff*, and a "variation of the minority view" represented by *Chatman* and *Weddle*, which was labeled "Option Two"); U.S. Sentencing Comm'n, *The Year in Review: 1997-98*, at 5 ("The amendment [of § 5K2.13] effectively overrides the interpretation that a departure categorically is not available for any defendant convicted of a 'crime of violence,' as that term is defined by the career offender guideline.").

Under amended § 5K2.13, the sentencing court is to focus on the "facts and circumstances of the defendant's offense," not on the elements of the offense, as under our court's interpretation of the old version. The new policy statement requires the court to analyze whether the facts and circumstances "involved . . . a serious threat of violence," rather than whether the offense qualified as a "crime of violence" under § 4B1.2(a). If and when our full court decides to review our precedent *en banc*, then it will be appropriate to consider whether a district court has authority to entertain a departure under amended § 5K2.13 if it concludes that the "facts and circumstances" of a particular bank robbery do not "involve[ ] actual violence or a serious threat of violence."

The judgment of the district court is affirmed.

———————————————