# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1912 NE

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| Ira H. Roberts, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: October 9, 2002
Filed: December 13, 2002

_____

Before MURPHY, BEAM, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.


Ira H. Roberts pled guilty to aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 1153 & 2241(c). The district court departed downward from the guideline range it had calculated and sentenced Roberts to 45 months. The government appeals, and we reverse.


The acts that were the basis for the charges in this case occurred in May 1997 on the Omaha Indian Reservation after Roberts went out drinking with Gardner Grant and his girlfriend. The three ended up at the girlfriend's house where they continued

drinking and eventually went to sleep on a blanket on the floor. P.S., the four year old daughter of Grant's girlfriend, was also sleeping on the blanket, and Roberts woke up during the night and began to touch her. He removed her top and felt her chest with his hands and then pulled off the rest of her clothing and lifted her on top of him. He placed his erect penis between her legs against her vagina and "mov[ed] his body in a slow motion" for five to ten minutes. Presentence Investigation Report (PSR) at 5. Roberts claims that at this point he realized how small she was and that it was not right to have sex with her. He disengaged himself and returned P.S. to her place next to her mother and went back to sleep. The mother of P.S. says that she was awakened by her crying and that P.S. told her that Roberts had tried to take off her underwear and had grabbed at her legs. The mother woke up Grant, and he took Roberts away from the house. Nothing was reported to the authorities at the time.

P.S. later moved in with her father who lived in Lincoln, Nebraska. When he initiated a discussion about safety over two years after Roberts had molested P.S., she told her father what had happened to her. He immediately notified the Lincoln police who contacted the FBI. Although neither P.S. nor her mother could remember Roberts' name, the FBI eventually discovered his identity. In an interview with an FBI agent Roberts admitted that he had molested P.S., but said that in "his state of intoxication he possibly may have been thinking he was having sex with his ex-girlfriend…or with Grant's girlfriend who was laying next to him." PSR at 5.

A grand jury indicted Roberts for aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 1153 & 2241(c). Roberts pled guilty to the charge under a plea agreement which anticipated that he would have an adjusted offense level of 24, after a three level reduction for acceptance of responsibility. It was projected that Roberts would have a criminal history category of II and a resulting sentencing range of 57 to 71 months.

The matter came on for sentencing after completion of the PSR. The PSR reported that Roberts' criminal history placed him in category III. See United States Sentencing Commission, Guidelines Manual, § 4A1.1 (2001) [U.S.S.G.]. The district court indicated that it would nevertheless apply category II in calculating his guideline range, and the government did not object. Roberts moved for a downward departure and hoped to be sentenced to 30 months in order to qualify for a shock incarceration program. He urged in particular that his offense "was an act of aberrant behavior, more of a substance abuse issue than pedophilia," and that he had made "great post arrest rehabilitative efforts." Sentencing Tr. (ST) at 9.

The district court continued the sentencing hearing and solicited briefs from the parties on the downward departure issues. At the reconvened hearing, the court adopted the factual statements in the PSR, ST at 21-22, and heard arguments on the departure motion. It decided to grant the motion on the basis of an aggregation of factors which it said were individually insufficient, but together were enough to remove the case from the heartland of the offense guideline. The factors it mentioned were: (1) aberrant behavior, (2) diminished capacity, (3) significant post offense efforts at rehabilitation, (4) recurrent depressive disorder, and (5) avoidance of an extended investigation and trial. The court concluded "that the offense in my opinion is not typical," ST at 34, and "there is enough evidence here to say that this is outside the heartland," though not by "very much." Id. at 35. After ruling that Roberts was entitled to a "two point reduction" and a 41 to 51 month sentencing range, the court sentenced Roberts to 45 months.[1]

---

[1]It is not clear what the court meant by a "two point reduction" or how it arrived at a 41-51 month sentencing range. A two level reduction to level 22 would have yielded a sentencing range of 46 to 57 months. U.S.S.G. ch. 5, pt. A (2001). A sentencing range of 41-51 months would only have been available with an adjusted offense level of 21, and Roberts could only have reached level 21 if he had received a three level reduction. See id.

The government appeals the court's decision to depart downward below 57 months, the bottom point of the sentencing range foreseen in the plea agreement. It argues that none of the factors mentioned by the district court were sufficient to warrant a departure and that inadequate factors cannot be added together to remove the case from the heartland. Roberts responds that the decision to depart should be treated with deference under Koon v. United States, 518 U.S. 81, 99 (1996), that he is entitled to a departure on the basis of aberrant behavior, and that the combination of factors cited by the district court was adequate under the totality of the circumstances.

We review a departure from the guidelines for abuse of discretion. See United States v. Sheridan, 270 F.3d 669, 671 (8th Cir. 2001). "However, 'whether a factor is a permissible basis for departure under any circumstances is a question of law, and [we] need not defer to the district court's resolution of the point.'" United States v. Buckendahl, 251 F.3d 753, 757 (8th Cir. 2001) (quoting Koon, 518 U.S. at 100); see also United States v. Diaz-Diaz, 135 F.3d 572, 580 (8th Cir. 1998) (de novo review).

The sentencing guidelines "'specify an appropriate sentencing range for each class of convicted persons based on various factors related to the offense and the offender.'" Koon, 518 U.S. at 92 (quoting U.S.S.G. ch. 1, pt. A (1995)). A sentencing court should "treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. ch.1, pt. A(4)(b) (2001). "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." Id. Specifically, a departure is appropriate where:

> the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into

consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). Departures cannot be based on grounds explicitly precluded by the guidelines, however. See United States v. Dillard, 975 F.2d 1554, 1555 (8th Cir. 1992) (§ 5K2.0 diminished capacity departure precluded by § 5K2.13 if violent offense is involved); see also United States v. Petersen, 276 F.3d 432, 436-37 (8th Cir. 2002) (same). When a potential factor is already taken into account or specifically discouraged by the guidelines, the court may depart only if the factor is "present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Koon, 518 U.S. at 96.

The first factor relied on by the district court was aberrant behavior. The court stated that "what seems to me to be somewhat atypical in this case is that you have an individual where it appears to be an isolated act, at least from all the evidence that I've seen." ST at 28-29. A departure for aberrant behavior is specifically precluded by the guidelines if a defendant has more than one criminal history point, see U.S.S.G. § 5K2.20, and Roberts had six criminal history points at the time he was sentenced. He urges that his criminal history includes mostly alcohol related offenses and nothing similar to the instant offense, but the guidelines do not distinguish crimes in this way and instead require that his prior offenses be taken into account. See id. When the Sentencing Commission created the aberrant behavior guideline, it specifically limited the circumstances in which it can be used. The guideline itself rules out its application to offenses involving serious bodily injury or death, use of a firearm or other dangerous weapon, and serious drug trafficking, as well as to offenders with a prior felony conviction or more than one criminal history point. See id. Because Roberts had six criminal history points, aberrant behavior was not an available ground on which to base a downward departure. See U.S.S.G. App. C, amen. 604 ("the restrictions on criminal history reflect a Commission view that

defendants with significant prior criminal records should not qualify for a departure premised on the aberrant nature of their current conduct"); Dillard, 975 F.2d at 1555.

Although the district court mentioned the issue of diminished capacity at the sentencing hearing, ST at 34, it did not make any finding that Roberts acted with a diminished capacity. It recognized that Roberts' "intoxication shouldn't play into the court's consideration because it was voluntarily induced," id., and § 5K2.13 of the sentencing guidelines specifically precludes a downward departure if a defendant's "significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants." The guidelines also rule out alcohol dependence or abuse as a basis for departure. See U.S.S.G. § 5H1.4. Finally, the district court noted Roberts' recurrent problems with depression, but it found that there was no "evidence that there was diminished capacity or mental illness at the time of the alleged incident." ST at 33-34.

The third listed factor was post offense rehabilitation. Rehabilitation efforts after an offense are relevant to whether a defendant has accepted responsibility. See U.S.S.G. § 3E1.1 cmt. n.1(g). Because the guidelines already account for rehabilitation under § 3E1.1, however, a departure can be granted only if there are rehabilitative efforts "exceptional enough to be atypical of cases in which the acceptance of responsibility reduction is usually granted." United States v. Kapitzke, 130 F.3d 820, 823 (8th Cir. 1997). The district court stated that "[a]nother issue that takes this out of the typical case" was Roberts' efforts at rehabilitation by maintaining sobriety for some months and by going to mental health counseling. ST at 35. The court nevertheless concluded that it could not say his efforts at post offense rehabilitation were extraordinary "because he's not working, he has a son and apparently is not really providing for the child," id., and we see no abuse of discretion with respect to the finding that his rehabilitation efforts were not extraordinary. The court also did not find his efforts "exceptional enough to be atypical," see Kapitzke, 130 F.3d at 823, and we note that they were limited to those specifically mentioned

in the comments to § 3E1.1 (counseling and drug treatment) and were apparently required as a condition of his release.

Another cited factor for departure was that Roberts "has a mental condition with respect to his recurrent depressive disorder." ST at 35. In rejecting mental condition as a basis for a diminished capacity departure, the court referred to Roberts' recurrent depression but found that there was no evidence he was suffering from it at the time he abused P.S. Moreover, the guidelines specify that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.3. This ground for departure was not appropriate unless Roberts' mental condition were "present to an unusual degree." U.S.S.G. § 5k2.0; see also Koon, 518 U.S. at 96 (discouraged factors must be present to exceptional degree). The district court made no such finding and in fact stated that it had found no evidence that Roberts was experiencing depression at the time of the offense.

The final factor was that Roberts' cooperation had spared the victim and her family some of the trauma "connected with this type of investigation…when trying to confirm and bring to justice an individual that committed an offense against a child that is of such a tender age." ST at 35. Although § 5K2.16 provides for a departure upon "voluntary disclosure of [the] offense," that provision is specifically limited to disclosures made prior to the discovery of an offense and departure under it is unavailable if the disclosure occurred in the course of an investigation. The guidelines account more generally for cooperation with authorities by permitting a reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1. A defendant is entitled to a two level reduction for "truthfully admitting the conduct comprising the offense," U.S.S.G. § 3E1.1 cmt n. 1(a), and to a further one level reduction for "timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial…." U.S.S.G. § 3E1.1(b)(2). Roberts received the full three level reduction for acceptance of responsibility, and a departure on the

same basis would only be appropriate if his acceptance were of "a degree not adequately taken into consideration by the Sentencing Commission." Petersen, 276 F.3d at 436 (quoting U.S.S.G. § 5k2.0). The district court did not make such findings, and the record reflects that Roberts confessed only after being approached by an investigating FBI agent, then attempted to minimize his responsibility by saying he might have confused the four year old child with an adult woman, and pled guilty only after reaching a plea agreement that decreased his exposure to jail time by underestimating his criminal history.

The guidelines do permit consideration of an aggregation of factors in determining whether a case is outside the heartland. See United States v. Simpson, 7 F.3d 813, 820 (8th Cir.1993). Use of this type of departure is limited to an "extraordinary" case, however:

> The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. However, the Commission believes that such cases will be extremely rare.

U.S.S.G. § 5K2.0, cmt. (2001). In order to depart on the basis of a combination of factors, a court must find that the combined circumstances differ significantly from the heartland "in a way that is important to the statutory purposes of sentencing." No such findings were made here.

In reviewing a departure on the basis of a combination of circumstances, we must consider each factor identified by the sentencing court and the weight given to it. Our review of "whether a factor is a permissible basis for departure" is de novo. Diaz-Diaz, 135 F.3d at 580. One of the main factors cited in this case was aberrant behavior, but it was not an available basis because Roberts had more than one

criminal history point. A factor which is specifically precluded under the guidelines cannot be used to take a case out of the heartland, whether or not considered in combination with other factors. <u>See, e.g.</u>, <u>United States v. Jones</u>, 158 F.3d 492, 497 (10th Cir. 1998). Even if all five factors mentioned by the district court were considered, however, they would not show an "extremely rare" situation. U.S.S.G. § 5K2.0, cmt. (2001). No factor was found to be exceptional, and the aggregation came to no more than a sum of its insufficient parts. <u>See</u> <u>United States v. Gallegos</u>, 129 F.3d 1140, 1146 (10th Cir. 1997) (refusing to depart on combination of several individually insufficient factors).

For these reasons, we reverse the judgment and remand for resentencing.

BEAM, Circuit Judge, concurring.

I concur in the result reached by the court in this case. I must do so under a proper application of the sentencing guidelines analyzed by the district court. However, I think the court fashioned a fair sentence under the circumstances presented and I laud its efforts to do so. Perhaps upon remand, the district court will be able to find an alternative route through the statutes and guidelines to reach the same destination although I admit that I am unable to see a way to do so at this time.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS,  EIGHTH CIRCUIT.