# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1058

_____

United States of America,                      *
                                               *
            Appellee,                          *
                                               *
      v.                                        *
                                               *
Antonio Rodriguez,                             *
                                               *
            Appellant.                         *

_____

No. 03-1316                    Appeals from the United States
                              District Court for the
_____                   District of Nebraska.

United States of America,                      *
                                               *
            Appellant,                         *
                                               *
      v.                                        *
                                               *
Antonio Rodriguez,                             *
                                               *
            Appellee.                          *

_____

Submitted:  October 20, 2003

Filed:  May 19, 2004

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury found Antonio Rodriguez guilty of conspiring to distribute 500 grams or more of methamphetamine and 500 grams or more of cocaine. The district court denied two of Rodriguez's pretrial motions. During the sentencing phase of trial, the district court granted Rodriguez's downward-departure motion and sentenced him to 262 months' imprisonment–followed by five years of supervised release. Rodriguez appeals his conviction and sentence. The government cross-appeals the district court's decision to depart downward. We affirm the conviction, but reverse and remand for resentencing.

## I. *Facts*

During late 2000 and early 2001, Rodriguez assisted local, state, and federal drug enforcement authorities in Nebraska. However, in early fall of 2001, Rodriguez himself became the subject of a drug investigation. After surveillance, and with the aid of a confidential informant, state police arrested Rodriguez during a controlled methamphetamine buy on August 6, 2001. Police searched Rodriguez's car and found two ounces of methamphetamine. Investigator Richard Aldag prepared an affidavit and obtained a search warrant for Rodriguez's motel room and obtained consent to search from Rodriguez's female companion, Amanda Brejcha-Walenta, for her motel room. The search uncovered marijuana and drug paraphernalia in Brejcha-Walenta's room and methamphetamine, a scale, and drug paraphernalia from Rodriguez's room.

On November 15, 2001, a grand jury indicted Rodriguez and Amanda Brejcha-Walenta for conspiracy to distribute 500 grams or more of methamphetamine and 500 grams or more of cocaine. Rodriguez filed several pretrial motions, including a motion to suppress and motion to dismiss and strike. A hearing was held on February 1, 2002, on the motion to suppress. In that motion, Rodriguez claimed Aldag's affidavit–offered in support of a warrant to search–stated knowingly false

information. The magistrate judge filed a "Report and Recommendation," which found that Rodriguez had not made a sufficient showing to entitle him to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The "Report and Recommendation" concluded that, by omitting the challenged information, there still remained sufficient information to support a finding of probable cause. The district court adopted the magistrate's report and denied Rodriguez's suppression motion.

Rodriguez also filed a motion to dismiss, claiming that the indictment should be dismissed because of an inconsistency between information in the affidavit for search warrant and the testimony of the affiant before the grand jury. The magistrate judge concluded in a second "Report and Recommendation" that the inconsistencies between the affidavit and the grand jury testimony were not material to the finding of probable cause by the grand jury and therefore did not form the basis for dismissal of the indictment. The magistrate's second "Report and Recommendation" was adopted by the district court, and Rodriguez's motion to dismiss was denied.

At trial Brejcha-Walenta, Jay Wills, Aaron Dixon, Fidel Martinez, Jose Villalobos, and Nick Janes testified against Rodriguez. All of these individuals were alleged co-conspirators with Rodriguez. Based upon their testimony, the jury convicted Rodriguez. During the sentencing phase of trial the government objected to the quantity of controlled substances attributed to Rodriguez contained in the Presentence Investigation Report ("PSR"). The government asserted that–based on Martinez's testimony–the quantities would total more than fifteen kilograms of methamphetamine. Additionally, the government offered testimony that Rodriguez possessed a firearm related to the drug-trafficking offense for which he was convicted.

Rodriguez also objected to the drug quantity, to the government's version of the offense in the PSR, to the four-level enhancement imposed for his role in the offense, to the two-level enhancement for obstruction of justice, and to the Criminal-History

points assessed. Rodriguez also filed a motion for downward departure based upon eight separate grounds. He also asserted Eighth Amendment violations. The court overruled the drug-quantity objections and used Martinez's testimony to calculate the amount attributable to the defendant and attributed ten kilograms of methamphetamine and four pounds of cocaine to Rodriguez.[1]

The court found that Rodriguez was an organizer or leader of a conspiracy involving five or more individuals and as such a four-level increase was appropriate. The court also found that Rodriguez obstructed justice by attempting to convince co-conspirator Brejcha-Walenta not to talk to authorities. The court denied Rodriguez's Eighth Amendment claims and the government's gun-enhancement motion.

Finally, the court decided to depart downward from a total offense level of 42, criminal history category II, with a sentencing range of 360 months to life, to a total offense level of 38, with a range of 262 to 327 months. The court then sentenced the defendant to 262 months' imprisonment followed by five years of supervised release.

---

[1] As to the drug-quantity issue, the court used the low end of Martinez's estimation in calculating the amount attributable to Rodriguez. This decision was based on the court's expressed concern regarding the precision of Martinez's testimony–that he spoke in general terms and was imprecise about the frequency with which he provided methamphetamine to Rodriguez. However, the court expressed confidence–based on Martinez's and other witnesses' testimony–that ten kilograms of methamphetamine and four pounds of cocaine should be attributed to Rodriguez.

Of the numerous issues raised[2] on appeal, we will address only the following: (1) Whether the district court erred in denying Rodriguez a *Franks* hearing and in its finding that the indictment was valid; (2) Whether the district court properly denied Rodriguez's motions to suppress evidence obtained from the hotel and vehicle searches; (3) Whether there was sufficient evidence to support the conspiracy conviction; (4) Whether the district court clearly erred in its drug-quantity determination; (5) Whether the district court committed plain error in not ordering a mistrial due to juror misconduct; (6) Whether the district court erred in its decision to depart downward.

## II. *Franks Hearing*

Rodriguez first argues that the district court erred in denying a hearing pursuant to *Franks*, and in denying his motion to dismiss due to a defective indictment. A refusal to hold a *Franks* hearing is reviewed for abuse of discretion. *United States v. Gabrio*, 295 F.3d 880, 882 (8th Cir. 2002). We also utilize the abuse of discretion standard when reviewing a ruling on a motion to dismiss an indictment due to false testimony presented to a grand jury. *United States v. Moore*, 184 F.3d 790, 794 (8th Cir. 1999).

To support his claim that the district court abused its discretion, Rodriguez notes that the search warrant affidavit contained false information regarding drug quantity and the grand-jury testimony contained false information about drug type

---

[2] Rodriguez also raises these issues in his brief: whether the district court violated *Apprendi,* misapplied role enhancement, or abridged Rodriguez's constitutional rights by sentencing him to 262 months' imprisonment; whether the district court abused its discretion in sustaining a relevance objection to a question posed to a government witness during cross-examination or in denying admission of a video tape; whether, under the plain-error standard, there was selective, malicious, and vindictive prosecution sufficient to warrant a new trial. Having carefully reviewed the record, we find no error of law in the district court's disposition of these matters. Therefore, the judgment is affirmed. *See* 8th Cir. R. 47B.

and quantity. Specifically, Rodriguez alleges that Investigator Aldag lied to the grand jury when he stated that on July 27, 2001, cocaine–instead of methamphetamine–was purchased during an undercover buy. Rodriguez also brings to our attention inconsistencies in the reported quantity of methamphetamine recovered at the time of his arrest.[3]

The factual discrepancies between Investigator Aldag's affidavit and the indictment noted by Rodriguez, without more, do not establish an abuse of discretion on the part of the district court. Conclusory allegations of falsehood are insufficient to make a substantial preliminary showing that a false statement was intentionally or recklessly included in the affidavit. *United States v. Mathison*, 157 F.3d 541, 547–48 (8th Cir. 1998). The small quantum of difference in the amount and description estimated in the warrant–and later corrected in the indictment–did nothing to diminish the illegality of Rodriguez's alleged conduct. Rodriguez does nothing more than point out minor descriptive inaccuracies–he has made no showing of intent or recklessness on the part of Investigator Aldag. When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a *Franks* hearing is not required. *United States v. Moore*, 129 F.3d 989, 992 (8th Cir. 1997), *cert. denied*, 523 U.S. 1067 (1998).

More significantly, in order to establish a *Franks* violation, Rodriguez was required to show that the remaining content of the affidavit was insufficient to establish probable cause. *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001). The district court found the Aldag warrant affidavit sufficient–without the alleged false information. On appeal, Rodriguez does not challenge the sufficiency of the warrant without the false statement. We find no abuse of discretion in the

---

[3] The search warrant claimed that three ounces of methamphetamine were recovered, the grand jury testimony indicated that two ounces were found, and the lab report contained a total-weight calculation of 1.8 ounces for the recovered methamphetamine.

district court's decision to refuse Rodriguez a *Franks* hearing or in its decision to deny Rodriguez's motion to dismiss.

### III. *Suppression*

Next, Rodriguez offers several arguments to support his claim that the district court erred in its refusal to suppress tainted evidence–allegedly gathered without proper constitutional authority. When considering the propriety of a denial of a motion to suppress, we review the district court's historical factual findings for clear error and its conclusions of law on the probable-cause issue de novo. *United States v. Wells*, 223 F.3d 835 (8th Cir. 2000).

### A. *Vehicle*

Rodriguez first claims that "there was no valid reason to conduct a search of the rental vehicle in this case"–even as an inventory search– and "the search violated the Fourth Amendment." He also contends that there was no probable cause for the vehicle search as there was no "reasonable suspicion" of drug trafficking.

After a careful review of the record, we are satisfied that the vehicle search was proper. The search was completed after a confidential informant contacted Rodriguez and arranged for a purchase of methamphetamine to take place at a specific time and location. Officers were waiting at the designated location. The vehicle was identified by the informant, and officers took both Rodriguez and the driver, Brejcha-Walenta, into custody. The officer then conducted a search of the car.

Under the automobile exception, if a law-enforcement officer has probable cause, he may search an automobile without a warrant. Probable cause exists when, given the totality of the circumstances, a reasonable person could believe that there is a fair probability that contraband or evidence of a crime would be found in a particular place. *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000).

Here, probable cause was established by the following facts: (1) a buy was scheduled and Rodriguez arrived as scheduled (right time, right place); (2) Rodriguez was positively identified by the informant; (3) Rodriguez exchanged the "code" word with the informant. *See United States v. Marchena-Borjas*, 209 F.3d 698, 699–700 (8th Cir. 2000) (after suspected methamphetamine seller arrived at particular location, at appointed time, driving a particular vehicle–all as previously described by informant–officers had probable cause to search vehicle).[4] Certainly, with these facts, the officers reasonably believed that a fair probability existed that contraband or evidence of a crime would be found in the automobile.

As far as Rodriguez's claim that officers violated his Fourth Amendment rights when they conducted an inventory search of his car, we frame the facts differently. In our view, probable cause existed to search the entire vehicle, and a search pursuant to the automobile exception to the Fourth Amendment may take place at a separate place and time. *United States v. Winters*, 221 F.3d 1039, 1041 (8th Cir. 2000). We affirm the district court's denial of the suppression motion.

## B. *Motel Rooms*

Rodriguez further claims that the warrant to search his room was based on evidence discovered in the "illegal" searches of his car, and thus anything recovered in his room should be suppressed as "fruit of the poisonous tree." This argument is without merit. As discussed *supra*, probable cause existed to search the vehicle, and the evidence that was legally retrieved under the automobile exception was used to

---

[4] Rodriguez attempts to distinguish *Marchena-Borjas* by arguing that, here, the informant had not seen Rodriguez with contraband; could not describe the type of vehicle that would be driven; and that the informant was not reliable. Rodriguez argues that because the conversations were in Spanish, the officers could not understand–or rely on–the informant. We, however, are unpersuaded by the distinctions noted by Rodriguez. The essential facts of *Marchena-Borjas* are similar, and relevant, to Rodriguez's claim.

support the warrant to search Rodriguez's motel room. The warrant, therefore, was not tainted, and probable cause existed for the search.

Rodriguez also argues that the search of room #521–in which Brejcha-Walenta was residing–was invalid. He claims that because he registered for the room, paid for the room, and could have excluded Brejcha-Walenta from the room (if he desired to move back into the room), he was in "complete control" of the room. Rodriguez further argues that the fact that an airline ticket bearing his name was found in the room also establishes his control of the room.

Assuming, without concluding, that Rodriguez had standing[5] to challenge this search, we note that Brejcha-Walenta–a person with authority over the property–consented to the search of the room. "The Fourth Amendment's general prohibition against warrantless searches does not apply when officers obtain voluntary consent from the person whose property is searched or from a third party with common authority over the property." *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). The consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared. *United States v. Matlock,* 415 U.S. 164, 170 (1974); *United States v. Esparza*, 162 F.3d 978, 980 (8th Cir. 1998).

Brejcha-Walenta gave consent–a factual finding of the district court that is not clearly erroneous–to search the motel room. She was the only person currently living in the room, thereby possessing at least common authority over the room. Thus, the

---

[5] We do not reach the question of Rodriguez's standing to challenge the search of room #521. Based on Rodriguez's admission that Brejcha-Walenta lived in the room, the magistrate judge found standing did not exist. However, the district court considered the merits of the issue and approached the claim using a consent analysis.

search was valid. Accordingly, the district court properly rejected Rodriguez's motion to suppress the evidence recovered from room #521.

## C. *Arrest Warrant*

Rodriguez also contends that the officers had no probable cause to arrest and detain him for this crime. This claim is predicated on Rodriguez's prior argument regarding the incorrect drug-quantity amount contained in the search warrant affidavit. He suggests that although there was a warrant for his arrest, the warrant was not valid because it was premised upon false information. As discussed above, we are not persuaded by this argument and find sufficient probable cause to support Rodriguez's arrest.

## IV. *Sufficiency*

Rodriguez also challenges the sufficiency of the evidence to support his conviction. Specifically, he claims that the government failed to prove (1) that there was an illegal agreement; (2) that Rodriguez knew about the agreement; and (3) that Rodriguez knowingly became a part of the alleged conspiracy. He points out that mere association or acquaintance cannot establish a conspiracy nor does mere presence at the scene of a crime prove conspiracy. *United States v. Hernandez*, 986 F.2d 234, 236 (8th Cir. 1993).

In a sufficiency review, the evidence is viewed in the light most favorable to the verdict, and all reasonable inferences supporting the verdict are accepted as established. A conviction will be reversed only if no reasonable jury could have convicted the defendant. *United States v. Leonos-Marquez*, 323 F.3d 679, 681 (8th Cir. 2003).

In order to sustain a conviction, the government was first required to prove–beyond a reasonable doubt–that Rodriguez agreed or conspired to distribute drugs. It is sufficient to prove that the conspiracy consisted of a tacit or implicit

-10-

understanding–it is not required that the conspiracy be explicit or expressed. *Id.* at 682. However, the government's proof must establish some degree of cooperation by Rodriguez, beyond mere knowledge of the existence of the agreement. *Id.*

Viewing the facts in the light most favorable to the government, and giving it the benefit of all reasonable inferences, the evidence is sufficient to sustain the jury's verdict. Rodriguez's supplier, Fidel Martinez, testified that he supplied Rodriguez methamphetamine and cocaine from at least January 2001 to July 2001. And, according to Martinez, the drug quantity–of both methamphetamine and cocaine–supplied to Rodriguez was in excess of 500 grams. Rodriguez vigorously attacks Martinez's credibility. However, credibility is a determination for the trier-of-fact, and its assessment is virtually unassailable on appeal. *United States v. Hernandez*, 187 F.3d 806, 809 (8th Cir. 1999).

Several other individuals involved in Rodriguez's drug-distribution chain also testified against him–including Dixon, Janes, Brejcha-Walenta and Wills. Their testimony, if believed, provided sufficient evidence to support the jury's finding that Rodriguez was guilty of conspiracy to distribute 500 grams or more of methamphetamine and cocaine.

V. *Drug Quantity*

Rodriguez next challenges the quantity of drugs attributed to him. We review a district court's drug-quantity finding (for sentencing purposes) using a clear error standard. *United States v. Causor-Serrato*, 234 F.3d 384, 389 (8th Cir. 2000). In conspiracy cases, the quantity of drugs to be attributed to the defendant includes those which were a part of acts committed by the defendant, aided and abetted or caused by him, as well as the reasonably foreseeable acts of others that were in furtherance of the jointly-undertaken criminal activities. *See* U.S.S.G. § 1B1.3(a)(1). Actions are reasonably foreseeable to a defendant when they fall within the scope of the agreement between the defendant and the coconspirators. *United States v. Jones*, 965

F.2d 1507, 1517 (8th Cir. 1992). This also includes actions that occur while the defendant is incarcerated. *United States v. Casares-Cardenas*, 14 F.3d 1283, 1288 (1994).

In its finding that Rodriguez should be held responsible for 500 grams or more of methamphetamine and cocaine, the district court said:

> Based on the testimony of all the witnesses as to the amount of methamphetamine and cocaine, the Court is confident that ten kilograms of methamphetamine and four pounds of cocaine should be attributed to the defendant, but no more than that.

The district court further concluded "that the testimony of Fidel Martinez should be used in calculating the amount attributable to the defendant." Martinez estimated that he distributed, in toto, between ten and fifteen kilograms of methamphetamine to Rodriguez. He also testified that he distributed approximately four pounds of cocaine to Rodriguez. This testimony was corroborated by Brejcha-Walenta. She testified that she saw Martinez deliver pound quantities of methamphetamine to Rodriguez. She also testified that on several occasions–under Rodriguez's direction–she picked up pound quantities of methamphetamine from Martinez. She also stated that she sold methamphetamine–for Rodriguez–in quantities of up to a half pound. In addition to the testimony of Martinez and Brejcha-Walenta, Dixon and Wills testified regarding drug quantities received from Rodriguez. The quantities presented by Dixon alone exceeded one pound of methamphetamine.[6] Wills also testified to amounts of methamphetamine in excess of one pound.

Because there is overwhelming evidence to support the district court's finding that Rodriguez's methamphetamine drug quantity exceeded 500 grams, we affirm.

---

[6] One pound of methamphetamine equals 453.59 grams.

## VI. *Juror Misconduct*

Rodriguez's next argument centers on juror misconduct stemming from a member of the jury asking a question–during a recess–of a government witness. Rodriguez fashions his claim as a violation of the Sixth Amendment's guarantee that every defendant receive a trial by an impartial jury. He did not raise this issue below, thus the allegation of error is reviewed for plain error. Fed. R. Crim. P. 52(b); *United States v. Williams*, 545 F.2d 47, 51 (8th Cir. 1976).

A juror approached Trooper Caladori, a government witness and a canine officer, and asked him about the availability of dog presentations for a school. When placed under oath and asked about the encounter, Trooper Caladori testified that he did not initiate the conversation. In response to her inquiry, he provided the appropriate contact number to the juror and ended all further contact. Trooper Caladori confirmed that no aspect of Rodriguez's trial was discussed during the exchange. Following these remarks, Rodriguez's counsel agreed that an admonishment to the jury provided a sufficient remedy for the witness-juror communication. And as agreed, the judge admonished the jury. However, Rodriguez now contends the court should have gone further and should have dismissed the juror or declared a mistrial.

Extrajudicial communication during trial between a prosecution witness and a juror is presumptively prejudicial subject to being rebutted by the government. *Remmer v. United States*, 347 U.S. 227, 229 (1954); *United States v. Williams*, 545 F.2d 47, 51–52 (8th Cir. 1976). However, the presumption of prejudice does not apply unless the extrinsic contact relates to factual evidence not developed at trial. *United States v. Hall*, 85 F.3d 367, 371 (8th Cir. 1996).

Rodriguez did not request a mistrial, nor did he ask for the juror to be dismissed. The communication did not involve facts related to the trial, and the steps taken by the court were those requested by Rodriguez and reasonable under the

-13-

circumstances. Rodriguez has made no showing of prejudice. As such, the district court's failure to dismiss the juror or declare a mistrial did not violate Rodriguez's Sixth Amendment right to receive a trial by an impartial jury.

## VII. *Downward Departure*

In its cross-appeal, the government contends that the district court erred in reducing Rodriguez's total Offense Level from 42 to 38. We review a district court's departure from the Guidelines de novo. The Protect Act, Pub. L. No. 108–21, 117 Stat. 650 (2003); *United States v. Aguilar-Lopez*, 329 F.3d 960, 963 (8th Cir. 2003).

The district court based its departure decision on three factors: (1) Rodriguez's criminal history; (2) Martinez's ambiguous testimony as to drug quantity; (3) Rodriguez's age. The court considered Rodriguez's prior offenses less serious than the pending drug-conspiracy offense. The court also stated its preference to give Rodriguez the benefit of the lower range of witness Martinez's estimate of drug quantities supplied to Rodriguez. Finally, the court considered that at age thirty one, Rodriguez would spend the bulk of his remaining productive years in prison and could take advantage of self-improvement opportunities in prison.

At the outset, we note that the district court erred in considering criminal history as a part of a § 5K2.0 departure–as opposed to a separate § 4A1.3 departure. The district court departed from an Offense Level of 42 (Criminal History Category II), with a sentence ranging from 360 months to life in prison–to an Offense Level of 38 (Criminal History Category II), with a range of 262 to 327 months. This departure was based–in part–on the court's finding that Rodriguez's criminal history was over-represented.[7] The court noted that this offense was Rodriguez's first felony.

---

[7] Rodriguez's criminal-history calculation was based upon two misdemeanor convictions. One involved an assault offense and the other involved a concealed-weapons charge. The latter conviction was committed during the time Rodriguez was actively involved in the current conspiracy. Further, his criminal history score of three

With an Offense Level of 42, Rodriguez's sentence cannot be less than 360 months whether he be classed in Criminal History Category I or II. The sentencing range for Offense Level 42, Criminal History Category I, is also 360 months to life in prison. In other words, a departure below 360 months on criminal-history grounds is error. *See United States v. Blackbird Sheridan*, 270 F.3d 669, 673 (8th Cir. 2001) (A departure below the lower limit of the Guidelines range for Criminal History Category I on the basis of the adequacy of criminal history cannot be appropriate because this category is set for a first-time offender). However, the district court's departure was not entirely based on an over-representation of criminal history.

Thus, we must determine whether the district court's other bases for departure are sufficient to take the case out of the "heartland"[8] and support a downward departure. In reviewing a departure based on multiple factors, we must consider whether a potential factor is already taken into account or specifically discouraged by the Guidelines. *Koon v. United States*, 518 U.S. 81, 96 (1996). To determine whether a circumstance was adequately taken into consideration by the Commission, Congress instructed courts to consider only the Sentencing Guidelines, policy statements, and official commentary of the Sentencing Commission. *Koon*, 518 U.S. at 92–93.

Cases outside of the "heartland" of the Guidelines should be "extremely rare." U.S.S.G. § 5K2.0 commentary. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual Guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case

points was at the top of the range for category II.

[8] In the absence of the characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different than that called for under the Guidelines, a sentence outside the Guideline range is not authorized. *See* 18 U.S.C. § 3553(b).

-15-

out of the Guideline's heartland. *Koon*, 518 U.S. at 96. Thus, our charge is to determine if Rodriguez's "conduct significantly differs from the norm" to such a degree that departure is warranted. *United States v. Roberts*, 313 F.3d 1050, 1053 (8th Cir. 2003).

In support of its decision to depart downward, the district court considered the attributable drug quantity as a relevant factor–however, testimony regarding drug quantity is covered specifically under the Guidelines in the determination of the offense level, in this case under U.S.S.G. § 2D1.1(a)(3). The court was also concerned about the credibility of Martinez's drug-quantity testimony. As a result of this concern, the court held Rodriguez responsible for the lower end of Martinez's estimation. The lower-end number was also used by the court to establish quantity to support the charged offense, which in our view amounts to a finding that the amount was credible.

The district court also departed, in part, due to the defendant's age. Rodriguez is a thirty-one year old male. Although a downward departure based on age is permissible, it is so only if the factor is present in an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. *United States v. Hildebrand,* 152 F.3d 756 (8th Cir. 1998) (finding departure based on age appropriate for a seventy-year-old with life-threatening health conditions). Unfortunately, a thirty-year-old male facing a lengthy prison sentence for conspiracy to distribute a large quantity of drugs is not extraordinary in our legal system.

Finally, another factor considered by the sentencing court in support of departure was the possibility of Rodriguez's future rehabilitation. The court optimistically suggested that the departure would encourage Rodriguez's participation in programs offered by the Bureau of Prisons and that "if he decides to make a genuine effort to obtain an education and to receive vocational training by this downward departure, this will give him some opportunity that he would be able to use

-16-

those things to his benefit after his release." The Guidelines consider rehabilitation efforts as relevant indicia as to whether a defendant has accepted responsibility. *See* U.S.S.G. § 3E1.1 cmt. n.1(g). However, because the Guidelines already account for rehabilitation under § 3E1.1, a departure can be granted only if there are rehabilitative efforts "'exceptional enough to be atypical of cases in which the acceptance of responsibility reduction is usually granted.'" *United States v. Roberts*, 313 F.3d 1050, 1054 (8th Cir. 2003) (quoting *United States v. Kapitzke*, 130 F.3d 820, 823 (8th Cir. 1997)).

In the present case, Rodriguez was not granted a reduction for acceptance of responsibility. We see no exceptional circumstance presented by Rodriguez's rehabilitation prospects. At least no circumstance so exceptional as to justify a downward departure from the Guidelines. Furthermore, when all of the factors used to support the sentencing court's decision to departure are examined individually, the resulting impact does not rise to the level of "extremely rare." In fact, the "aggregate [comes] to no more than a sum of its insufficient parts." *United States v. Roberts,* 313 F.3d 1050, 1056 (8th Cir. 2003). Accordingly, we reverse and remand for resentencing consistent with this opinion.

_____